David S. Kupetz (CA Bar No. 125062)
  dkupetz@sulmeyerlaw.com
Steven F. Werth (CA Bar No. 205434)
  swerth@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California  90071-1406
Telephone: 213.626.2311

(Proposed) Bankruptcy Counsel for Simo
Holdings, Inc., Debtor and Debtor in
Possession

# UNITED STATES BANKRUPTCY COURT

## Southern District of California

| | |
|---|---|
| In re | Case No.  11-02898-11 |
| SIMO HOLDINGS, INC.,<br>a California corporation, | **DATE:** March 1, 2011<br>**TIME:** 9:00 a.m.<br>**JUDGE:** Hon. Margaret M. Mann<br>**PLACE:** Chamber 1—Room 218<br>U.S. Bankruptcy Court<br>325 West "F" Street<br>San Diego, CA 92101 |
| Debtor. | Chapter 11 |
| | **DEBTOR'S FIRST DAY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES** |
| Employer ID# 93-1037856 | [Omnibus Declaration of Mark Simo in Support "First Day" Motions Filed Concurrently Herewith] |

*SulmeyerKupetz, A Professional Corporation*
*333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR*
*LOS ANGELES, CALIFORNIA 90071-1406*
*TEL 213.626.2311 • FAX 213.629.4520*

SWERTH\ 707097.3

# TABLE OF CONTENTS

<u>Page</u>

I. JURISDICTION AND SUMMARY OF RELIEF REQUESTED ........................................ 3

II. PRELIMINARY STATEMENT AND NEED FOR HEARING ON AN
    EMERGENCY BASIS ........................................................................................ 3

III. BACKGROUND ................................................................................................ 5

    A.    Initial Business ........................................................................................ 5

    B.    Shift in Distribution Strategy ................................................................... 5

    C.    Funding of Retail Store Growth -- Spy Optic IPO and Sale of
        International Rights ................................................................................. 6

    D.    Formation of No Fear Retail Stores, Inc. ................................................. 7

    E.    Formation of No Fear MX, Inc. ................................................................ 7

    F.    Unsuccessful Financing Efforts .............................................................. 8

    G.    Recent Financial Results ........................................................................ 8

    H.    Debt Structure ........................................................................................ 8

    I.    Equity Interests in the Debtor ................................................................. 9

    J.    Real Estate Leases and Store Closings ................................................. 9

    K.    Employees .............................................................................................. 9

    L.    Assets and Income ................................................................................. 9

IV. FACTORS PRECIPITATING CHAPTER 11 FILING ............................................... 10

V. CASH COLLATERAL BUDGET/FORECAST ........................................................ 11

VI. SCOPE OF REQUEST FOR USE OF CASH COLLATERAL .................................... 12

VII. ARGUMENTS AND AUTHORITIES .................................................................... 12

    A.    The Relief Requested is Authorized by 11 U.S.C. § 363 ........................... 12

    B.    Secured Parties' Interest in Cash Collateral Will Be Adequately
        Protected by a Substantial Equity Cushion, Even If There Is
        Diminution in Cash Collateral Under the Proposed Budget ....................... 14

    C.    Emergency Authority to Use Cash Collateral is Warranted Under 11
        U.S.C. § 363(c)(3) and Rule 4001(b) to Allow the Debtor to Operate
        its Business. .......................................................................................... 16

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

i

VIII. THE BANK WITH WHICH THE DEBTOR HAS BANK ACCOUNTS MUST HONOR THIS ORDER.........................................................................................17

IX. NOTICE...............................................................................................................18

X. CONCLUSION .....................................................................................................18

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page**

<u>CASES</u>

<u>In re Alyucan Interstate Corp</u>,
   12 B.R. 803 (Bankr. D. Utah 1981) ............................................................. 15, 16

<u>In re Center Wholesale, Inc.</u>,
   759 F.2d 1440, 1449 n. 21 (9th Cir. 1985) ........................................................ 16

<u>In re Mickler</u>,
   9 B.R. 121, 123 (Bankr. M.D. Fla. 1981) ......................................................... 13

<u>United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.</u>,
   484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988)................................... 15, 16

<u>STATUTES</u>

11 U.S.C. § 105 ............................................................................. 17

11 U.S.C. § 1107(a) ......................................................................... 13

11 U.S.C. § 1108 ............................................................................ 12

11 U.S.C. § 361 ..................................................................... 14, 15, 16

11 U.S.C. § 363 ................................................................. 12, 13, 14, 15

11 U.S.C. § 363(a) .......................................................................... 13

11 U.S.C. § 363(c)(1) ....................................................................... 12

11 U.S.C. § 363(c)(2) ....................................................................... 13

11 U.S.C. § 363(c)(2)(B) ..................................................................... 3

11 U.S.C. § 363(c)(3) .................................................................... 3, 16

11 U.S.C. § 506(c) .......................................................................... 13

11 U.S.C. § 522 ............................................................................. 13

11 U.S.C. § 544 ............................................................................. 13

11 U.S.C. § 545 ............................................................................. 13

11 U.S.C. § 547 ............................................................................. 13

11 U.S.C. § 548 ............................................................................. 13

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

11 U.S.C. § 552(b) ................................................................................................... 13

11 U.S.C. § 552(b)(1) ............................................................................................. 13

28 U.S.C. § 1334 ...................................................................................................... 3

28 U.S.C. § 1408 ...................................................................................................... 3

28 U.S.C. § 1409 ...................................................................................................... 3

28 U.S.C. § 157 ........................................................................................................ 3

28 U.S.C. § 157(b)(2)(A) .......................................................................................... 3

28 U.S.C. § 157(b)(2)(M) ......................................................................................... 3

28 U.S.C. § 157(b)(2)(O) .......................................................................................... 3

Cal. Code of Civ. P. § 487.010 ................................................................................. 4

Cal. Code of Civ. P. § 488.300 ................................................................................. 4

## RULES

Fed. R. Bankr. P. 4001(b) ....................................................................................... 16

Fed. R. Bankr. P. 4001(b)(2) .............................................................................. 16, 17

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SWERTH\ 707097.3

1 | TO THE HONORABLE MARGARET M. MANN, UNITED STATES
2 | BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE,
3 | SECURED CREDITORS OF RECORD, THE TWENTY LARGEST UNSECURED
4 | CREDITORS, AND INTERESTED PARTIES:

5 | <center>**EMERGENCY MOTION**</center>

6 |   Through this Emergency Motion for Interim and Final Orders
7 | Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy
8 | Code and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the
9 | "Motion"), Simo Holdings, Inc. (the "Debtor" or "Simo Holdings"), the debtor and
10 | debtor in possession in the above-captioned case, seeks the entry of interim and
11 | final orders authorizing the Debtor to use cash collateral pursuant to 11 U.S.C.
12 | § 363(c)(2)(B) and (c)(3) and Rule 4001(b)(2) of the Federal Rules of Bankruptcy
13 | Procedure.  This Motion is brought in accordance with Local Bankruptcy Rule
14 | 9014-5 and this Court's "Guidelines For First Day Motions" in Appendix D-1 and D-2 to
15 | the Local Bankruptcy Rules, as it is a matter which must be addressed immediately in
16 | order to ensure the least possible disruption to the debtor's ongoing business operations
17 | and thereby enhance the chances for success in chapter 11.

18 |   This Motion is made and based upon the moving papers, the attached
19 | Memorandum of Points and Authorities and the concurrently filed Omnibus
20 | Declaration of Mark Simo in support of "First Day" motions (the "Simo Decl."), the
21 | arguments and representations of counsel and any oral or documentary evidence
22 | presented at the time of the hearing.

23 |   **WHEREFORE** the Debtor respectfully requests that the Court enter
24 | an order:

25 |    (1) granting this Motion;

26 | / / /

27 | / / /

28 | / / /

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

<center>1</center>

1            (2)     authorizing the use of cash collateral pursuant to 11 U.S.C.

2    § 363(c)(2)(B) and (c)(3) and Rule 4001(b)(2) of the Federal Rules of Bankruptcy

3    Procedure; and

4            (3)     granting such other and further relief as this Court deems just

5    and proper under the circumstances.

6    DATED:  February 24, 2011        **Sulmeyer**Kupetz
        A Professional Corporation

7

8

9            By: _____

10           Steven F. Werth
        (Proposed) Bankruptcy Counsel for Simo

11           Holdings, Inc., Debtor and Debtor in
        Possession

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION AND SUMMARY OF RELIEF REQUESTED

This Court has jurisdiction to consider the foregoing motion (the "Motion") under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to the Motion, the Debtor seeks authority to use cash collateral to pay its ordinary and necessary operating expenses.  The statutory predicates for the relief requested herein are 11 U.S.C. §§ 363(c)(2)(B) and (c)(3) under which the Debtor seeks authority to use cash collateral.

## II.

## PRELIMINARY STATEMENT AND NEED FOR HEARING
## ON AN EMERGENCY BASIS

The Debtor commenced this case by filing a voluntary chapter 11 petition on February 24, 2011 (the "Petition Date").  The Debtor continues to manage and operate its business as a debtor in possession.  The Debtor seeks authority from the Court to use cash collateral to pay its ordinary and necessary expenses and generally operate its business and meet administrative expenses. The Debtor's immediate access to cash is absolutely critical to maximizing the value of the estate.  The Debtor requires the use of cash collateral to maintain its operations, pay ordinary operating expenses, and replenish its inventory.  In order to maintain operations without disruption thereby preserving the value of the estate, the Debtor must be permitted to pay in the ordinary course, among others, its employees, shippers, vendors, utility providers, and suppliers.   As such, a hearing on an emergency basis is required and appropriate.

There are only two entities with an interest in the cash collateral of the Debtor, and both entities obtained such interest by filing a writ of attachment

3

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  against the Debtor.  These entities are FMF Racing, which filed a writ of

2  attachment against the Debtor in the amount of $1,500,000, and Don Emler

3  (together with FMF Racing, the "Secured Parties"), who filed a writ of attachment

4  against the Debtor in the amount of $802,333.33.  True and correct copies of

5  these writs of attachment are attached hereto as **Exhibit "1"**.  Pursuant to

6  California Code of Civil Procedure section 487.010, all of the Debtor's property

7  within California is subject to attachment if there is a statutory method of levy for

8  the property.  The levy provisions contained in California Code of Civil Procedure

9  section 488.300 *et seq*. provide for levy of substantially all assets of a corporation,

10  with the exception of certain intellectual property.  Thus, the Secured Parties have

11  a collective claim against the Debtor in the amount of $2,302,333.33, which is

12  secured by all property of the Debtor's estate to which a writ of attachment may

13  attach, including equipment, inventory, deposit accounts, and accounts receivable.

14          As set forth below and in the concurrently-filed Simo Decl., the

15  interests of the Secured Parties in the Debtor's cash collateral is adequately

16  protected by a substantial equity cushion on account of the assets of the Debtor.

17  As of the Petition Date, the Debtor's assets have an estimated value of

18  $12,500,000.  This consists of approximately $25,000 in cash, $700,000 in non-

19  intercompany accounts receivable, $290,000 in fixed assets, a 50% ownership in

20  real property in North Carolina which interest is estimated to be valued at $1.5

21  million, and $10 million in intellectual property.  Simo Holdings owns the "So Cal"

22  and "Fearless" trademarks.  This equity cushion alone provides the Secured

23  Parties with adequate protection.  Further, even if this equity cushion was

24  declining, the Secured Parties would be adequately protected by a combination of

25  (a) the continued operation of the Debtor's business as well as the business of its

26  wholly-owned subsidiary No Fear MX, Inc. ("NFMX") and its 97.75% owned

27  subsidiary No Fear Retail Stores, Inc. ("NFRS"); and (b) the granting of a

28  replacement lien on post-petition receivables to the extent of any diminution in

4

1  value of the Secured Parties' collateral as a result of the Debtor's use of cash

2  collateral.  The replacement lien would be on all post-petition assets in the same

3  priority and to the same extent and validity as the Secured Parties interest.

4  Pending a final hearing on the Motion, the Debtor requests

5  emergency authority to use cash collateral in accordance with a eight-week

6  budget (the "Budget" or the "Forecast") attached to the Simo Decl. as Exhibit "4".[1]

7                                        III.

8                                **BACKGROUND**

9       **A.    Initial Business**

10         The Debtor was incorporated as No Fear, Inc. in 1990 (changing its

11  name to Simo Holdings, Inc. in March 2009).  The Debtor's primary activities were

12  the design, manufacture and sale of casual apparel and accessories under the

13  "No Fear" brand to wholesale accounts in the U.S., primarily department stores.

14  The Debtor also licensed "No Fear" for the sale of products internationally.  The

15  popularity of the "No Fear" brand grew explosively into the mid 1990s, with annual

16  revenues reaching approximately $140 million in 1995.

17       **B.    Shift in Distribution Strategy**

18         Sales began to decline after 1995, as customers for "No Fear" and similar

19  brands shifted from department stores to specialty retailers catering to the youth market.

20  Profitability also declined, as department stores squeezed margins to make up for

21  shrinking sales.  Because of these developments, and because the "No Fear" brand

22  appeared to be losing relevance in the core sports-oriented youth market, the Debtor

23

24  _____

25  [1] The Debtor also requests some flexibility in connection with the Budget - namely, that
    the Debtor be permitted to exceed the disbursements forecasted in the Budget by up to
    15% on a line-by-line basis and to exceed aggregate disbursements forecasted in the
26  Budget by a total of 10%. The Debtor further requests that the balance of any unspent
    amounts on a weekly basis carry forward to be available to the Debtor in the following
27  weeks.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1 changed its business model, terminating distribution of its products through department

2 stores and other "big box" retailers in favor of lower volume, but more relevant and

3 profitable, specialty retailers. As part of this shift in distribution strategy, the Debtor also

4 decided to experiment with its own retail stores. The first "No Fear" retail store was

5 opened in 1999, to sell both "No Fear" branded products and third party products. 19

6 more stores were added by the end of 2004.

7    **C.    Funding of Retail Store Growth -- Spy Optic IPO and Sale of**

8    **International Rights**

9        By the end of 2004, it appeared to the Debtor's management that its

10 retail store strategy was sound, and that there existed the opportunity to grow to

11 several hundred stores. However, it understood that such growth would require

12 significant capital investment, as each new store cost approximately $250,000 to

13 $400,000 to open, primarily for leasehold improvements, fixtures and equipment,

14 and inventory.

15        In December 2004, the Debtor took public its Spy Optic subsidiary

16 and cashed out some of its Spy Optic shares to use to fund new store openings.

17 (the Debtor had started Spy Optic in about 1999, to design, manufacture and sell

18 sunglasses and sport goggles. Spy Optic grew to approximately $35 million in

19 annual revenues by the time of its IPO. From 2004 to 2009, the Debtor and its

20 affiliates retained significant minority ownership of the company and "No Fear"

21 retail stores became the single largest customer for Spy Optic products.)

22        In October 2005, the Debtor sold, for $12.5 million, 50% of its rights to

23 "No Fear" outside the U.S. (excluding rights to use "No Fear" for motocross

24 products, which had been licensed to a third party). The rights were sold to Sports

25 Direct International plc, a major European sporting goods retailer based in the

26 United Kingdom. The sale was accomplished through the creation of a new British

27 company, No Fear International Ltd., managed by a Sports Direct subsidiary and

28 owned 50% by the Debtor and 50% by another Sports Direct subsidiary. The

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Debtor used the sale proceeds primarily to fund growth of its "No Fear" retail
2  stores.

3    **D.    Formation of No Fear Retail Stores, Inc.**

4    As of September 2006, Simo Holdings was operating approximately
5  30 "No Fear" stores.  Simo Holdings set a target of 50 stores, a number that
6  management believed would provide the critical mass necessary to show that "No
7  Fear" could grow to a national chain of several hundred doors.  With a 50-store
8  "proof of concept," management believed that it would be in a position to attract
9  significant financing, from private equity sources or possibly through an IPO, to
10  fund an additional 50 to 100 stores.  In anticipation of that future financing, Simo
11  Holdings created a new wholly-owned subsidiary, NFRS and, in September 2006,
12  transferred the retail store business to NFRS, including all related assets (except
13  cash and inventory) and subject to all related liabilities and commitments, in
14  exchange for 40,000,000 shares of NFRS common stock.

15    Following the transfer, Simo Holdings purchased both proprietary and
16  third party products for NFRS, creating a payable from NFRS to Simo Holdings.
17  Simo Holdings also provided support services including warehousing, design,
18  accounting and production to NFRS.  As a result, a portion of Simo Holding's
19  shared overhead was allocated to NFRS.  Simo Holdings also filed a consolidated
20  tax return for all of its subsidiaries, creating a payable from NFRS to Simo
21  Holdings for NFRS's portion of taxes.

22    In September 2008, Simo Holdings transferred ownership of the "No
23  Fear" trademark to NFRS, together with associated copyrighted designs, and
24  assigned to NFRS certain license contract rights related to "No Fear."

25    **E.    Formation of No Fear MX, Inc.**

26    In about 2000, Simo Holdings granted to one of its employees, Jeffrey
27  Surwall, a license to use "No Fear" for the design, production and sale of protective
28  equipment for the sport of motocross.  Mr. Surwall built the business to approximately

7

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311  •  FAX 213.629.4520

1  $14 million in annual revenues. In July 2007, Simo Holdings purchased the assets of the

2  business from Mr. Surwall for $7 million. The business was acquired through a newly

3  formed subsidiary, NFMX. The purchase price was to be paid out at established

4  increments over a 5-year period. Following the acquisition, the Debtor provided support

5  services for NFMX and a portion of the Debtor's shared overhead was allocated to

6  NFMX.

7          The Debtor shares office and warehouse space with NFMX and

8  NFRS in an office in Carlsbad, California, 92008. Both NRFS and NFMX filed

9  chapter 11 bankruptcy petitions on February 24, 2011.

10         F.      **Unsuccessful Financing Efforts**

11              Beginning in 2007 and continuing through 2010, the Debtor and

12  NFRS pursued a series of efforts and transactions in order to raise capital to fund

13  the growth of NFRS. These efforts and transactions included (i) in 2007 – 2008, a

14  proposed reverse merger, combined with a public stock offering, with Orange 21

15  Inc. (the parent company of Spy Optic), then listed on the NASDAQ, (ii) in 2008, a

16  private placement of preferred stock, and (iii) in 2009 – 2010, a proposed reverse

17  merger, combined with a public stock offering, with Gatorz Inc., a company listed

18  on the Toronto Stock Exchange – Venture. Throughout this period, the Debtor

19  and NFRS also had discussions regarding possible investment with dozens of

20  private equity firms and other potential financing sources. None of these efforts

21  were successful.

22         G.      **Recent Financial Results**

23              The Debtor generated total revenues of approximately $32,572,199

24  for its fiscal year ended 2008. For its fiscal year ended 2009, the Debtor

25  generated total revenues of approximately $26,396,981. For its fiscal year ended

26  2010, the Debtor generated total revenues of approximately $22,204,927.

27         H.      **Debt Structure**

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    The Debtor does not have any secured creditors with an interest in
2  cash collateral other than the Secured Parties. As of the Petition Date, the total
3  amount of these clams is $2,302,333.33. As of the Petition Date, the Debtor has
4  estimated unsecured debt in the approximate amount of $14.6 million, primarily
5  owed to trade vendors, suppliers, shippers, and other service providers.

6    **I.    Equity Interests in the Debtor**

7    The Debtor's equity interests are held by numerous individuals,
8  including the founders of the Debtor, Brian Simo (37.15%) and Mark Simo
9  (38.20%). Approximately 27 other individuals hold the remaining 24.65% interest
10  in the Debtor, the largest of which is Don Emler with 6.64%.

11    **J.    Real Estate Leases and Store Closings**

12    As stated above, the Debtor currently leases office space in Carlsbad,
13  California, which it shares with NFMX and NFRS.

14    **K.    Employees**

15    In anticipation of NFRS merging with Gatorz Inc., all remaining
16  operations and employees of Simo Holdings were transferred to either NFRS or
17  NFMX in September 2010. As a result, all employees were placed on the payrolls
18  of either NFRS or NFMX. The Debtor thus has no employees.

19    **L.    Assets and Income**

20    As of the Petition Date, Simo Holdings' assets have an estimated
21  value of $12,500,000. This consists of approximately $25,000 in cash, $700,000
22  in non-intercompany accounts receivable, $290,000 in fixed assets, a 50%
23  ownership in real property in North Carolina which interest is estimated to be
24  valued at $1.5 million, and $10 million in intellectual property. Simo Holdings
25  owns the "So Cal" and "Fearless" trademarks.

26    As more fully detailed in the Budget attached to the Simo Decl as
27  Exhibit "4", Simo Holdings' income on a monthly basis is approximately $25,000,

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

9

1  consisting of rental income from the property it has an interest in North Carolina.

2  Its expenses are less than this amount.

### IV.

### FACTORS PRECIPITATING CHAPTER 11 FILING

5  As a consumer business selling discretionary items, the Debtor, and

6  NFRS and NFMX, have been negatively impacted by the recession that hit the

7  United States starting in late 2007.  The Debtor has been disproportionately

8  impacted by the downturn in consumer spending given (i) the discretionary nature

9  of its products, (ii) its target customer and (iii) its geographic concentration.  The

10  Debtor's NFRS business consists of the sale of items which are discretionary

11  purchases for consumers who have been disproportionately impacted by the

12  downturn in consumer spending.  The Debtor has traditionally targeted "blue

13  collar" customers, who have been severely hurt by the housing and labor crises.

14  Further, NFRS's retail stores are concentrated in California, Arizona and Nevada,

15  three of the hardest hit areas in the United States.

16  As a result of these factors, NFRS has experienced declining

17  comparable store sales and declining overall sales for the last three years.  Sales

18  declined approximately 20% in NFRS's fourth fiscal quarter of 2010 (ending

19  August 31, 2010) compared to the fourth quarter of 2009, and same store sales

20  were down approximately 12.0% in fiscal 2010.  NFRS is bound by a number of

21  long term leases with landlords who have generally been unwilling to renegotiate

22  its leases to reflect the current lower market rates or the state of NFRS's business.

23  NFRS is also burdened by a significant amount of expenses as a

24  result of the failed Gatorz transaction in 2009 and 2010.  NFRS incurred

25  approximately $1,000,000 in professional fees including legal and accounting fees

26  in the preparation of that transaction.  Finally, NFRS has been unable to secure

27  sufficient third party inventory for NFRS's retail stores due to its lack of financing.

28  Lack of third party inventory, which serves as the primary traffic driver in NFRS's

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  stores, has created a negative downward spiral – the lack of inventory has

2  impaired store sales, which has further impacted cash flow, which, in turn, has

3  further impaired the Debtor's ability to secure third party inventory.

4  Having been unable to renegotiate leases with landlords, NFRS has already

5  closed a number of unprofitable stores in an attempt to mitigate its losses.  The Debtor

6  anticipates continuing to attempt to secure third party financing, while pursuing a

7  reorganization that likely would result in a smaller store base, a reduction in corporate

8  overhead, and a focus on licensing of the Debtor's and NFRS's established brands in

9  order to create a smaller, profitable entity going forward.

## V.

## CASH COLLATERAL BUDGET/FORECAST

12  Attached to the Simo Decl. as Exhibit "4" is the Debtor's proposed

13  cash collateral operating budget for the next eight-week period (the "Budget")

14  which was prepared by the Debtor.  *See* Simo Decl.  The Budget, which is

15  conservative, shows that the Debtor can pay its expenses without additional

16  financing from a third party.  Even so, the Debtor is currently in discussions with

17  third parties regarding post-petition financing, and the Debtor hopes to reach an

18  agreement on that within the next eight weeks.  The Debtor's business is a

19  seasonal one, and the Debtor is currently in a traditionally slow period.

20  The Debtor has eliminated unnecessary expenses, and the Budget

21  takes into account the Debtor's cost-cutting measures.  All payments described in

22  the Budget are necessary to maintain and continue the Debtor's operations, fund

23  administrative expenses, and allow the Debtor to move forward with its effort to

24  obtain post-petition financing to maximize the value of the Debtor's estate.  Failure

25  to make payment in accordance with the Budget could result in immediate and

26  irreparable harm to the Debtor's operations, the value of the estate, and the

27  interests of creditors.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

11

## VI.

## SCOPE OF REQUEST FOR USE OF CASH COLLATERAL

The Debtor requests (i) pending a final hearing, emergency authority to use cash collateral to satisfy administrative expenses (including the payment of rent for its Carlsbad offices and warehouse) in accordance with the Budget and (ii) at the final hearing, final authority to use cash collateral through a final hearing to be set not less than 15 days after the interim hearing.  See Budget attached to the Simo Decl. as Exhibit "4" and proposed Order attached hereto as **Exhibit "2"**.

The terms of the proposed interim Order are appropriate and do not include any provisions inappropriate for an interim agreement as described in the Local Bankruptcy Rules of the Southern District of California.  Specifically, the proposed Order does not contain any of the provisions which this Court requires moving parties to alter the Court's attention to, as specified in the "Guidelines for Motions To Use Cash Collateral Or To Obtain Credit", which is Appendix D2 to the Local Rules of the United States Bankruptcy Court for the Southern District of California.

## VII.

## ARGUMENTS AND AUTHORITIES

### A.    The Relief Requested is Authorized by 11 U.S.C. § 363

Section 363 of the Bankruptcy Code governs the Debtor's use of property of its estate.  Section 363(c)(1) provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

A debtor in possession has all the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  compliance with section 363 of the Code.  11 U.S.C. § 1107(a).  Section 363(c)(2)

2  establishes a special requirement with respect to "cash collateral", by providing

3  that the trustee or debtor in possession may not use, sell or lease "cash collateral"

4  under subsection (c)(1) unless (i) such entity that has an interest in such collateral

5  consents, or (ii) the court, after notice and a hearing, authorizes such use, sale or

6  lease.

7          "Cash collateral" is defined by the Code as follows:

8          [C]ash, negotiable instruments, documents of title,
           securities, deposit accounts, or other cash equivalents
9          whenever acquired in which the estate and an entity
           other than the estate have an interest and includes the
10         proceeds, products, offspring, rents, or profits of property
           subject to a security interest as provided in section
11         552(b) of this title, whether existing before or after the
           commencement of a case under this title.
12

13  11 U.S.C. § 363(a).

14          The definition of "cash collateral" set forth in section 363(a) refers to

15  section 552(b) of the Code, which provides:

16          Except as provided in sections 363, 506(c), 522, 544,
           545, 547 and § 548 of this title, if the debtor and an entity
17         entered into a security agreement before the
           commencement of the case and if the security interest
18         created by such security agreement extends to property
           of the debtor acquired before the commencement of the
19         case and to proceeds, products, offspring, rents, or
           profits of such property, then such security interest
20         extends to such proceeds, products, offspring, rents or
           profits acquired by the estate after the commencement of
21         the case to the extent provided by such security
           agreement and by applicable non-bankruptcy law, except
22         to the extent that the court, after notice and a hearing and
           based on the equities of the case, orders otherwise.
23

24  11 U.S.C. § 552(b)(1).

25          It is universally acknowledged that the debtor's cash "is the life blood

26  of the business" and the bankruptcy court must assure that such life's blood "is

27  available for use even if to a limited extent".  In re Mickler, 9 B.R. 121, 123 (Bankr.

28  M.D. Fla. 1981).  Courts typically authorize a debtor to use cash collateral to

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  continue its operations so long as the interests asserted by affected creditors in

2  such cash are adequately protected.

3         As this Motion establishes, the standards for authorizing the Debtor to

4  utilize cash collateral are satisfied in this case because (i) there is a sufficient

5  equity cushion protecting the Secured Parties' interest (this alone provides more

6  than sufficient basis for authorization of the requested use of cash collateral);

7  (ii) the Debtor's and NFRS's ongoing business operations will adequately protect

8  and preserve the value of the Secured Parties' cash collateral, and (iii) the

9  Secured Parties will be further adequately protected by the grant of replacement

10  liens on post-petition inventory, fixture, furniture, equipment, accounts receivable

11  and proceeds to the extent of any diminution in the value of the Secured Parties'

12  cash collateral.

13        **B.**    **Secured Parties' Interest in Cash Collateral Will Be**

14           **Adequately Protected by a Substantial Equity Cushion,**

15           **Even If There Is Diminution in Cash Collateral**

16           **Under the Proposed Budget**

17         As noted above, a debtor's authority to use cash collateral is typically

18  conditioned on providing "adequate protection" to entities that assert an interest in

19  such cash. 11 U.S.C. § 361. Although the term "adequate protection" is not

20  defined in the Bankruptcy Code, Section 361 provides the following three non-

21  exclusive examples of what may constitute adequate protection:

22          (1)    requiring the trustee to make a cash payment or

23          periodic cash payments to such entity, to the extent that
        the . . . use . . . under section 363 of this title . . . results
        in a decrease in the value of such entity's interest in such

24          property.

25          (2)    providing to such entity an additional or

26          replacement lien to the extent that such . . . use . . .
        results in a decrease in the value of such entity's interest

27          in such property; or

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

(3)    granting such other relief . . . as will result in the
realization by such entity of the indubitable equivalent of
such entity's interest in such property.

Neither section 361 nor any other provision of the Code defines the
nature and extent of "interest in property" of which a secured creditor is entitled to
adequate protection under section 363. However, the statute plainly provides that
a qualifying interest demands protection only to the extent that the use of the
creditor's collateral will result in a decrease in "the value of such entity's interest in
such property". United Savings Ass'n of Texas v. Timbers of Inwood Forest
Assocs., Ltd., 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).

Timbers teaches that a secured creditor is entitled to "adequate
protection" only against the diminution in value of the collateral securing its
allowed secured claim. Where the Secured Parties have writs of attachment in the
total amount of $2,302,333.33, which is secured by approximately assets worth in
excess of $12 million, it follows that the Secured Parties' interest in cash collateral
is adequately protected. Moreover, separate and independent of any question of
diminution in value, a secured creditor has no right to preservation of the equity
cushion in its collateral. The Supreme Court in Timbers determined that the
property interest the Debtor must adequately protect is the lien that secures the
creditor's claim. Timbers, 108 S. Ct. at 630. Further, the value of the lien may not
exceed the allowed amount of the secured claim. Accordingly, the property
interest of an oversecured creditor (the Secured Parties, in this case) that the
Debtor must adequately protect, namely the lien value, is the allowed amount of
the secured claim and does not include the equity cushion. In re Alyucan
Interstate Corp, 12 B.R. 803 (Bankr. D. Utah 1981), the court ruled that an equity
cushion is not a requirement of adequate protection because a secured creditor is
only entitled to protection against a decline in the value of its lien. Accordingly, the
existence of an equity cushion (the value of the property above the lien) is not a

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

15

1   necessary component of adequate protection.  The court reasoned that section

2   361 speaks not in terms of preserving equity, but in terms of compensating for any

3   "decrease in the value of [an] interest in property".  Id., at 803.  The Supreme

4   Court's decision in Timbers confirms the interpretation of section 361.

5       **C.**   **Emergency Authority to Use Cash Collateral is Warranted**

6         **Under 11 U.S.C. § 363(c)(3) and Rule 4001(b) to Allow the Debtor**

7         **to Operate its Business.**

8       The Debtor has requested an emergency hearing to consider the

9   relief requested in this Motion.  Section 363(c)(3) and Rule 4001(b)(2) require the

10  Court to schedule a cash collateral hearing in accordance with the needs of the

11  debtor and conduct a preliminary hearing for the purpose of authorizing the use of

12  cash collateral to the extent necessary to avoid irreparable harm to the Debtor.

13  Section 363(c)(3) mandates that "[a]ny hearing [on the use of cash collateral] . . .

14  shall be scheduled in accordance with the needs of the debtor".  The Ninth Circuit

15  has recognized that emergency relief is often crucial to the success of a corporate

16  reorganization:

17      We realize that "in certain circumstances, the entire
    reorganization effort may be thwarted if emergency relief

18      is withheld" and that reorganization under the Bankruptcy
    Code "is a perilous process, seldom more so than at the

19      outset of the proceedings when the debtor is often
    without sufficient cash flow to fund essential business

20      operations".  It is for this very reason that Congress
    specified that hearings concerning the use of cash

21      collateral "shall be scheduled in accordance with the
    needs of the debtor".  11 U.S.C. § 363(c)(3).

22

23  In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n. 21 (9th Cir. 1985) (citations

24  omitted).

25      In the present case, emergency use of cash collateral by the Debtor,

26  pending a final hearing, is necessary to prevent immediate and irreparable harm to

27  the Debtor and its creditors.  Absent such use, the Debtor will have little or no

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   funds from which to conduct its operations, and may be forced to permanently

2   discontinue its business to the detriment of all creditors.

3   As such, the Debtor requests that the Court permit the Debtor to use

4   cash collateral to the extent necessary to avoid irreparable harm pending a final

5   hearing in accordance with the Budget and the Order, schedule a final hearing on

6   this Motion under Rule 4001(b)(2), following the final hearing authorizing the

7   Debtor to use cash collateral in order to pay its ordinary and necessary operating

8   expenses and generally operate its business in accordance with the Budget.

9                                    VIII.

10                   **THE BANK WITH WHICH THE DEBTOR HAS**

11              **BANK ACCOUNTS MUST HONOR THIS ORDER**

12   The Debtor has four accounts with California Bank and Trust and one

13   with Ford.[2]  In order to give effect to this Court's order authorizing the Debtor's Use

14   of Cash Collateral pursuant to this Motion, it is necessary that the Court direct

15   California Bank and Trust and Ford Advantage to comply with the order, and abide

16   by requests for use of funds by the Debtor.  The Court may issue such an order

17   pursuant to section § 105 of the Bankruptcy Code, which authorizes the Court to

18   issue "any order, process, or judgment that is necessary or appropriate to carry

19   out the provisions of this title".

20

21

22

23   [2]  Concurrently herewith, the Debtor has filed its First Day Motion for Order Authorizing
     Debtor to Maintain Certain Active Bank Accounts and Cash Management System, as

24   Modified, and Continue Use of its Existing Business Forms (the "Cash Management
     Motion").  The Cash Management Motion contains a more detailed discussion of the

25   Depository Account.  In general, the Debtor requests authority to continue its existing
     cash management/banking system as described above, with the modification that

26   California Bank and Trust and Ford Advantage be precluded from asserting control over
     or otherwise sweeping (or transferring in any manner) funds from the Debtor's accounts

27   for any purpose.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## IX.

## NOTICE

The Debtor intends to provide notice of this Motion by overnight mail, e-mail, facsimile, or hand delivery on (i) the Office of the United States Trustee, (ii) the twenty largest unsecured creditors, (iii) the Secured Parties, (iv) California Bank and Trust, (v) Ford Advantage, and (vi) any party requesting special notice.

## X.

## CONCLUSION

Based on the foregoing, the Debtor respectfully requests that the Motion be granted, that the proposed Order be entered, and that this Court grant such other and further relief as the Court deems just and proper.

DATED:  February 24, 2011          **Sulmeyer**Kupetz
A Professional Corporation


By: _____
David S. Kupetz
Steven F. Werth
(Proposed) Bankruptcy Counsel for Simo
Holdings, Inc., Debtor and Debtor in
Possession

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# EXHIBIT "1"

AT-135

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
Barry R. Gore, Esq. (SBN 143278)
CLARKSON, GORE & MARSELLA, A Professional Law Corp.
3424 Carson Street, Suite 350
Torrance, California 90503

TELEPHONE NO.: (310) 542-0111  FAX NO. (Optional): (310)213-7254
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): FMF Racing and Don Emler

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 325 S. Melrose
MAILING ADDRESS:
CITY AND ZIP CODE: Vista, California 92081
BRANCH NAME: North County

PLAINTIFF: FMF Racing

DEFENDANT: Simo Holdings, Inc.

| WRIT OF ATTACHMENT<br>[X] AFTER HEARING      [ ] EX PARTE | CASE NUMBER:<br>37-2010-00055973-CU-BC-NC |
|---|---|

1. TO THE SHERIFF OR ANY MARSHAL OR CONSTABLE OF THE COUNTY OF: San Diego

2. TO ANY REGISTERED PROCESS SERVER: You are only authorized to serve this writ in accord with CCP 488.080.

3. This writ is to attach property of defendant (name and last known address): Simo Holdings, Inc., 1812 Aston Avenue, Carlsbad, California 92008, (760) 931-9550

   and the attachment is to secure: $ 1,500,000.00

4. Name and address of plaintiff: FMF Racing, c/o Clarkson, Gore & Marsella, 3424 Carson Street, Suite 350, Torrance, California 90503.

5. YOU ARE DIRECTED TO ATTACH the following property or so much thereof as is clearly sufficient to satisfy the amount to be secured by the attachment (describe property and state its location; itemize by letter): All corporate property of Defendant Simo Holdings, Inc. which is subject to attachment pursuant to CCP 487.010(a); Location: 1812 Aston Avenue, Carlsbad, California 92008.

   [ ] This information is on an attached sheet.

6. [ ] An interest in the real property described in item 5 stands upon the records of the county, in the name of the following person other than the defendant:
   a. Name:
   b. Mailing address, if known, as shown by the records of the office of the county tax assessor (specify):

7. [ ] The real property on which the
   [ ] crops described in item 5 _____ are growing
   [ ] timber described in item 5 _____ to be cut is standing stands upon the records of the county in the name of.
   a. Name:
   b. Address:

[SEAL]

Date: SEP 17 2010          Clerk, by _M. Quindo_____ , Deputy
                                             M Quindo

                                                                              Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
AT-135 [Rev. January 1, 2003]

**WRIT OF ATTACHMENT**
(Attachment)

Legal
Solutions
On Plus

Code of Civ. Proc., § 488.010

20

09/14/2010   16:26  Barry                        (FAX)310 214 7254                    P.003/011

AT-135

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
Barry R. Gore, Esq. (SBN 143278)
CLARKSON, GORE & MARSELLA, A Professional Law Corp.
3424 Carson Street, Suite 350
Torrance, California 90503

TELEPHONE NO.: (310) 542-0111   FAX NO. *(Optional):* (310)213-7254
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* FMF Racing and Don Emler

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 325 S. Melrose
MAILING ADDRESS:
CITY AND ZIP CODE: Vista, California 92081
BRANCH NAME: North County

PLAINTIFF: Don Emler

DEFENDANT: Simo Holdings, Inc.

| WRIT OF ATTACHMENT | CASE NUMBER: |
| [X] AFTER HEARING    [ ] EX PARTE | 37-2010-00055973-CU-BC-NC |

1. TO THE SHERIFF OR ANY MARSHAL OR CONSTABLE OF THE COUNTY OF: San Diego

2. TO ANY REGISTERED PROCESS SERVER: You are only authorized to serve this writ in accord with CCP 488.080.

3. This writ is to attach property of defendant *(name and last known address):* Simo Holdings, Inc., 1812 Aston Avenue, Carlsbad, California 92008, (760) 931-9550

   and the attachment is to secure: $ 802,333.33

4. Name and address of plaintiff: Don Emler, c/o Clarkson, Gore & Marsella, 3424 Carson Street, Suite 350, Torrance, California 90503.

5. YOU ARE DIRECTED TO ATTACH the following property or so much thereof as is clearly sufficient to satisfy the amount to be secured by the attachment *(describe property and state its location; itemize by letter):* All corporate property of Defendant Simo Holdings, Inc. which is subject to attachment pursuant to CCP 487.010(a); Location: 1812 Aston Avenue, Carlsbad, California 92008.

   [ ] This information is on an attached sheet.

6. [ ] An interest in the real property described in item 5 stands upon the records of the county, in the name of the following person other than the defendant:
   a. Name:
   b. Mailing address, if known, as shown by the records of the office of the county tax assessor *(specify):*

7. [ ] The real property on which the
   [ ] crops described in item 5 _____ are growing
   [ ] timber described in item 5 _____ to be cut is standing stands upon the records of the county in the name of
   a. Name:
   b. Address:

[SEAL]

Date: SEP 17 2010          Clerk, by _M. Quindo_____ , Deputy
                                        M Quindo

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
AT-135 [Rev. January 1, 2003]

WRIT OF ATTACHMENT
(Attachment)

Legal
Solutions
& Plus

Code of Civ. Proc., § 488.010

21

# EXHIBIT "2"

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.

David S. Kupetz (CA Bar No. 125062)
  dkupetz@sulmeyerlaw.com
Steven F. Werth (CA Bar No. 205434)
  swerth@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California  90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

### UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re.

SIMO HOLDINGS, INC., a California corporation,

Debtor.

BANKRUPTCY NO. 11-02898-11

Date of Hearing:  March 1, 2011
Time of Hearing:  9:00 a.m.
Name of Judge:  Hon. Margaret M. Mann

# ORDER ON DEBTOR'S EMERGENCY FIRST DAY MOTION AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL ON AN INTERIM BASIS AND SETTING FINAL HEARING

**IT IS ORDERED THAT** the relief sought as set forth on the continuation pages attached and numbered two (2)

through 2 with exhibits, if any, for a total of 2 pages, is granted. Motion/Application Docket Entry No. _____

//

//

//

//

//

//

DATED:

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

**Sulmeyer**Kupetz, A Professional Corporation
 (Firm name)

By: /s/ Steven F. Werth
    Attorney for ☒ Movant ☐ Respondent
    Simo Holdings, Inc., Debtor and Debtor in Possession

SWERTH\ 708278.1 CSD 1001A

American LegalNet, Inc.
www.USCourtForms.com

23

CSD 1001A [11/15/04] **(Page 2)**
ORDER ON DEBTOR'S EMERGENCY FIRST DAY MOTION AUTHORIZING DEBTOR'S USE OF CASH
COLLATERAL ON AN INTERIM BASIS AND SETTING FINAL HEARING
DEBTOR: SIMO HOLDINGS, INC., a California corporation,          CASE NO: 11-02898-11

The emergency motion (the "Motion") filed by Simo Holdings, Inc. (the "Debtor") on February 25, 2011, requesting

interim and final orders authorizing use of cash collateral and granting replacement liens in connection therewith

came on for initial hearing before this Court on March 1, 2011. Appearances at the hearing are reflected in the

record. The Court considered the papers filed in this matter and the facts and circumstances of this case. Based

on the foregoing, good cause having been established for granting the Motion as set forth below, and in order to

prevent immediate and irreparable harm to the bankruptcy estate,

IT IS HEREBY ORDERED THAT:

1.       The Motion is granted on an interim basis as set forth herein.

2.       A Final Hearing on the Motion shall be held on _____, 2011, at _____, in Courtroom _____ of the

above-entitled Court (the "Final Hearing"). The Debtor may file supplemental papers with respect to the Motion.

The Motion shall be filed by _____, 2011. Any opposition to the Motion shall be filed and received by _____

on _____, 2011, such that it is received by the Court and counsel for the opposing party, if any, by the close of

business on said date.

3.       Pending the Final Hearing, the Debtor is authorized to use cash collateral in accordance with the cash

expense budget (the "Budget") attached to the Omnibus Declaration Mark Simo in support of "First Day" Motions

as Exhibit "4". During the period covered by the Budget, the Debtor shall be permitted to exceed disbursements

forecasted in the Budget by not more than 15% on a line-by-line basis and by not more than 10% with respect to

the total disbursements forecast in the Budget. Any disbursement amount available under the Budget and not used

during the designated period is saved and preserved and shall be available for use during any subsequent period.

***

American LegalNet, Inc.
www.USCourtForms.com

SWERTH\ 708278.1 CSD 1001A                                                                        24